*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, e-mail corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| AARON S. ROSENBLUM, | ) | |
| | ) | Supreme Court No. S-14651 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-11-05890 CI |
| v. | ) | |
| | ) | O P I N I O N |
| ANGELICA M. PERALES, | ) | |
| | ) | No. 6793 - July 5, 2013 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Andrew Guidi, Judge.

Appearances: Steven J. Priddle, Law Offices of Steven J. Priddle, Anchorage, for Appellant. Angelica M. Perales, pro se, Anchorage.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

MAASSEN, Justice.

## I.    INTRODUCTION

This appeal arises from a custody dispute in which the superior court awarded primary physical custody, child support, and interim attorney's fees to the mother. The father claims that the custody decision failed to include adequate findings, gave disproportionate weight to a single factor, and was based on an improper factor. The father also argues that the superior court abused its discretion in issuing the child

support order and in its award of interim attorney's fees. We affirm the superior court's decisions on child custody and attorney's fees. We remand the issue of child support for clarification.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

John,[1] born in March 2007, is the son of Angelica Perales and Aaron Rosenblum. John was conceived when both parents were in the Army and stationed in Texas, and a home paternity test indicated that Aaron was the father. Aaron told Angelica that he was not ready to be a father but would try to spend as much time with John as possible; his hesitation stemmed in part from the fact that his work was soon going to require that he move to Virginia.

Aaron visited John and Angelica two or three times a week for the several months before he moved away. While living in Virginia he continued to maintain contact and to voluntarily pay child support. Between May 2007 and December 2008, Aaron saw John about three times.

In August 2007 Angelica was honorably discharged from the Army. She and John remained in Texas until December 2008, when they moved to Alaska. In January 2011 Angelica informed Aaron that she would be traveling to Texas for a funeral, and she offered to bring John to visit Aaron in Virginia. Aaron, who in the meantime had married Shaun Rosenblum, accepted Angelica's offer. John stayed with Aaron, Shaun, and their young son from mid-January to early March 2011. During the visit Aaron and Shaun developed some concerns about John's well-being, and Aaron told Angelica that he wanted them to work out a written agreement on custody. The

---

[1]    We use a pseudonym for the son to protect his privacy.

exchange became acrimonious and, although the parents' accounts conflict, Angelica later testified that Aaron refused to return John to her until they had reached an agreement. Angelica filed this custody action; the parents attempted to work out an agreement but were unsuccessful. John returned to Alaska with Angelica.

## B.    Proceedings

In her complaint, Angelica requested primary physical custody and shared legal custody. Aaron accepted the court's jurisdiction and asked for the same relief: primary physical custody and shared legal custody. An interim hearing took place in July 2011 before Superior Court Judge Andrew Guidi, during which Aaron and Angelica agreed to an interim visitation schedule. They also informed the judge that despite the absence of an official child support order, Aaron had been making monthly payments to Angelica ranging from $300 to $900, and that past child support was not at issue.

In September 2011 Angelica moved for interim attorney's fees, citing the divorce exception to Civil Rule 82 and the economic disparity between her and Aaron. The superior court granted her motion and denied Aaron's subsequent motion for reconsideration. A custody trial took place in January 2012. After the close of evidence, the superior court made extensive oral findings on the record and concluded that it was in John's best interests that primary physical custody be awarded to Angelica. The subsequent written order outlined the custody award and incorporated by reference the court's oral findings. An interim and permanent child support order followed in June 2012, requiring Aaron to make monthly payments of $1,436.08. The order provides that either party may request the services of the Child Support Services Division ("CSSD") if issues about past child support arise.

Aaron appeals.

## III. STANDARD OF REVIEW

We will disturb the superior court's custody decision only if "controlling findings of fact are clearly erroneous or if the record shows that an abuse of discretion has occurred."[2] "Findings of fact are clearly erroneous when we are left with a definite and firm conviction, viewing the record as a whole, that a mistake has been made."[3] The superior court receives "particular deference" for findings that are based on oral testimony: "the trial court, not this court, performs the function of judging the credibility of witnesses and weighing conflicting evidence."[4] The superior court abuses its discretion when it considers improper factors, fails to consider statutory factors, or gives disproportionate weight to certain factors while ignoring others.[5]

"We reverse child support awards only if the superior court abused its discretion or applied an incorrect legal standard."[6] We review for clear error the superior court's findings on a parent's income.[7] Whether the superior court applied the correct legal standard in calculating child support poses a question of law we review de novo.[8]

---

[2] *I.J.D. v. D.R.D.*, 961 P.2d 425, 428 (Alaska 1998).

[3] *Id.*

[4] *Ebertz v. Ebertz*, 113 P.3d 643, 646 (Alaska 2005) (quoting *In re Adoption of A.F.M.*, 15 P.3d 258, 262 (Alaska 2001)).

[5] *I.J.D.*, 961 P.2d at 428.

[6] *Koller v. Reft*, 71 P.3d 800, 804 (Alaska 2003) (citing *Beaudoin v. Beaudoin*, 24 P.3d 523, 526 (Alaska 2001)).

[7] *Id.* (citing *Routh v. Andreassen*, 19 P.3d 593, 595 (Alaska 2001)).

[8] *Id.* (citing *Beaudoin*, 24 P.3d at 526).

We review attorney's fees awards for abuse of discretion.[9] We determine de novo whether an award of attorney's fees is governed by a rule or an exception to a rule.[10]

## IV. DISCUSSION

### A. The Superior Court Did Not Abuse Its Discretion In Awarding Physical Custody To Angelica.

Aaron claims that the superior court's custody decision was an abuse of discretion because it lacks adequate findings, gives disproportionate weight to a single factor, and violates AS 25.20.095 by taking into consideration Aaron's military deployments. We affirm the custody decision.

#### 1. The superior court's findings are sufficient.

Aaron argues that the superior court made inadequate findings because its written findings merely incorporate its earlier oral findings and thus fail to demonstrate "a thorough and appropriate reasoning process." But the superior court's detailed oral findings are sufficient.

"Alaska Statute 25.24.150(c) requires the superior court to base its custody rulings on the child's best interests and lists nine potentially relevant factors that the court must consider . . . ."[11] The superior court "need not refer to all of [the factors] in

---

[9] *Moody-Herrera v. State, Dep't of Natural Res.*, 967 P.2d 79, 82 (Alaska 1998).

[10] *B.J. v. J.D.*, 950 P.2d 113, 118 (Alaska 1997).

[11] *Park v. Park*, 986 P.2d 205, 206 (Alaska 1999). The statutory factors include the needs of the child; each parent's ability and desire to meet those needs; the child's preference, if he or she is old enough to have one; the love and affection between the child and each parent; the stability and continuity of the child's environment; the willingness of each parent to facilitate the child's relationship with the other parent; any

(continued...)

explaining its custody decision. The court needs only to discuss those factors that it considers actually relevant in light of the evidence presented in the case before it; express mention of each factor is not required . . . ."[12] The superior court's findings are sufficient if they provide "a clear indication of the factors [that the court] considered important in exercising its discretion or allow us to glean from the record what considerations were involved."[13] That "clear indication" can come from both written and oral findings. When a party claimed in *Duffus v. Duffus* that the superior court's written findings were inadequate, we looked to the oral findings and held that they, "as effectuated by [the] written order, [were] adequate to address the statutory factor[s] and clarify the basis for the court's decision."[14]

Although the superior court made no written findings in this case, it "incorporated . . . by reference" the comprehensive oral findings that it had made at trial. The court thoroughly discussed the trial evidence on the record in the context of each of the statutory factors: the love between John and his parents; each parent's willingness to facilitate John's relationship with the other; John's physical, emotional, mental, medical, and social needs; the capability and desire of both parents to meet those needs; the absence of substance abuse and domestic violence; the need for stability in John's life; and other considerations such as the emotional tension and geographic distance

---

[11](...continued) domestic violence or child abuse; any substance abuse that directly affects the child; and other factors that the court deems pertinent. AS 25.24.150(c).

[12] *Park*, 986 P.2d at 207 (footnote omitted).

[13] *Ebertz v. Ebertz*, 113 P.3d 643, 648 (Alaska 2005) (quoting *Smith v. Weekley*, 73 P.3d 1219, 1225 (Alaska 2003)) (internal quotation marks omitted).

[14] 932 P.2d 777, 780 (Alaska 1997).

between the parents. The superior court's findings are sufficient for effective appellate review.

**2.    The superior court  did not give disproportionate weight to a single statutory factor.**

Aaron argues that the superior court gave disproportionate weight to the stability factor, weighing it "to the virtual exclusion of all other[s]." Findings that assess only one factor without disclosing "active consideration of any other statutory factor" may well be considered inadequate.[15]    But the oral findings here show thorough consideration of all statutory factors. The court discussed its concerns about Aaron's frequent deployments, which would take him away from home for a third of each year. It credited Angelica for her unfailing commitment to her son, recalling testimony from both parties that Aaron was initially hesitant to be a father and that he was "a relative newcomer" to John's life. The court further commended Angelica for her "exemplary job" in facilitating John's relationship with Aaron before the custody dispute developed. Although many factors favored both parents equally, the superior court found Angelica to be stronger in several of them. Given the court's careful balancing of a number of different factors that it found relevant to John's best interests, we cannot say that the superior court gave undue weight to a single one.

**3.    The superior court did not abuse its discretion in considering Aaron's military deployments.**

Aaron claims that AS 25.20.095 barred the superior court from considering his military deployments and that "[t]o the extent Aaron's deployment potential affected the trial court's decision, remand is necessary to purge its impact." At trial, Aaron himself testified at length about his deployments and submitted an exhibit that listed all

---

[15]    *See Park*, 986 P.2d at 207.

of his overseas rotations.[16] His counsel contended in closing argument, however, that the deployments were "temporary" and "limited" and therefore could not be held against Aaron in the custody analysis.

We hold that, under the facts of this case, the superior court was not statutorily barred from considering Aaron's deployments in its assessment of the child's best interests. Alaska Statute 25.20.095(a) provides:

> In determining the availability of a parent for custody or visitation, if a parent is deployed or in a position where the parent may be deployed, the court shall take particular care to ensure that the child has the maximum opportunity, consistent with the best interests of the child, to have contact with the parent. Except as provided in this section, a parent's *temporary* duty, mobilization, or deployment to military service and the resultant *temporary* disruption to the child of the parent may not be a factor in a court's decision to grant or deny a petition for custody or visitation.

(Emphasis added). The section explicitly excludes military duty, mobilization, or deployment as a consideration only when it is "temporary" and when it causes only a "temporary disruption" to the child.[17]

The legislative history of this provision shows that it was prompted by the "high deployment tempo" of the "War on Terror," which was leading to "strained

---

[16] The transcript references deployments over 40 times.

[17] Aaron also argues that AS 25.24.150(*l*) provides that a parent's military service may not be considered in the best interests assessment. But that section does not override AS 25.20.095(a), as it includes the phrase "[e]xcept as provided in AS 25.20.095." AS 25.24.150(*l*). *See also* AS 25.24.150(c)(9) (providing that in determining the child's best interests the court may consider "other factors that [it] considers pertinent").

military families."[18]  The initial version of HB 334, which accompanied the sponsor statement, prohibited any consideration at all of "military duties . . . when determining child custody."[19]  But versions later introduced in the house in February and March 2010 included the phrase "*temporary* duty, mobilization, or deployment to military service"[20] and added a provision affording maximum opportunity for contact between the child and the deployed parent, making it clear that deployments, and their duration, could be part of the custody analysis after all.[21]  A member of the house proposed that "temporary deployment" be statutorily defined as one that was "less than six months"[22] but withdrew his proposal after the chair objected to "an amendment that draws a bracketed time frame around a deployment."[23]  The question of when a deployment is "temporary" remained open to interpretation.

---

[18]  H. Judiciary Comm., H.B. 334 Bill File, Sponsor Statement, 26th Leg., 2d Sess. at 2580 (Feb. 10, 2010); *see also* Sen. Fin. Comm., SB 210 Bill File, Sponsor Statement, 26th Leg., 2d Sess. at 4756 (Jan. 19, 2010) (expressing similar concerns in support of failed companion bill).

[19]  H. Judiciary Comm., H.B. 334 Bill File, Sponsor Statement, 26th Leg., 2d Sess. at 2580-82 (Feb. 10, 2010).

[20]  H.B. 334A, 26th Leg., 2d Sess. (Feb. 10, 2010) (emphasis added).

[21]  *See* H.B. 334C, 26th Leg., 2d Sess. (Mar. 11, 2010); H.B. 334Z (enacted), 26th Leg., 2d Sess. (Apr. 18, 2010); Sen. Fin. Comm., HB 334 Bill File, Explanation of Differences Between S.B. 210 (JUD) and H.B. 334 (RLS), 26th Leg., 2d Sess. at 3745 (2010).

[22]  Comment of Representative Jay Ramras, Chair, at 3:01:30-3:01:45, Hearing on H.B. 334 Before the H. Judiciary Comm., 26th Leg., 2d Sess. (Mar. 8, 2010) (reading an amendment proposed by Representative Gruenberg).

[23]  Comment of Representative Jay Ramras, Chair, at 3:02:04-3:02:16, Hearing on H.B. 334 Before the H. Judiciary Comm., 26th Leg., 2d Sess. (Mar. 8, 2010); Comment of Representative Max Gruenberg, at 3:02:36-3:02:41, Hearing on H.B. 334 Before the H. Judiciary Comm., 26th Leg., 2d Sess. (Mar. 8, 2010).

In the absence of a legislative definition we give the term "temporary" "its ordinary meaning."[24] Common definitions of "temporary" include "lasting for a time only: existing or continuing for a limited time: impermanent, transitory."[25] In this case, both Shaun and the custody investigator testified that Aaron is away from home on periodic deployments that total a third of each year. Aaron did not dispute these facts at trial, nor does he dispute them on appeal. It is reasonable to conclude that regular deployments of up to four months of every year for the indefinite future are not "temporary" because they are not "continuing for a limited time"; it is also reasonable to conclude that the disruption this schedule would cause to John is more than a "temporary disruption." There is support in the legislative history for the view that the legislature sought to enhance the ability of the parties to return to a permanent and stable custody arrangement following the "temporary disruption" caused by a "temporary deployment" — a goal inconsistent with an indefinite schedule of regular deployments.[26]

---

[24] *See Fuhs v. Gilbertson*, 186 P.3d 551, 556 (Alaska 2008) (citing AS 01.10.040(a)).

[25] WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2353 (1968); *see also* BLACK'S LAW DICTIONARY 1602 (9th ed. 2009) ("Lasting for a time only; existing or continuing for a limited (usu. short) time; transitory.").

[26] *See* H. Judiciary Comm., H.B. 334 Bill File, 26th Leg., 2d Sess. at 2592 (2010) (containing letter from the Department of Defense that discusses "the difficulties facing parents who must temporarily give up custody of their children or who must forgo visitation when called to take up the burdens of the nation" and suggests that a "possible legislative response [might be establishing] the presumption that the prior custody agreement [will] be restored upon the military member's return from deployment"); Testimony of Kaci Schroeder Hotch, Staff, Representative Bill Thomas, Alaska State Legislature, at 4:12:43-4:12:53, Hearing on H.B. 334 Before the H. Rules Comm., 26th Leg., 2d Sess. (Mar. 22, 2010) (explaining that it "is a special circumstance, when a parent is deployed. And this is a temporary circumstance. The deployment is not going to be forever. This is a temporary thing."). A number of states provide for temporary
(continued...)

Under the facts of this case, we find no abuse of discretion in the superior court's consideration of Aaron's deployments in its best interests analysis.[27]

B.      **The Superior Court's Failure To Clearly State The Basis For Its Child Support Award Was An Abuse of Discretion.**

Aaron claims that the child support order constitutes an abuse of discretion because it does not include adequate findings; it requires Aaron to pay interim child support; and it provides that the parties may seek the assistance of CSSD if issues of past child support arise.  We remand the issues of permanent and interim child support to the superior court for clarification because we cannot determine the factual basis for the award.  But we find no abuse of discretion in the court's treatment of past support.

1.      **The superior court's findings regarding the basis for the amount of child support were inadequate.**

Aaron first argues that the superior court erred when it ordered him to pay a monthly child support amount of $1,436.08.  Alaska Civil Rule 90.3 requires that each parent submit a statement of his or her income with documentation.[28]  In Aaron's affidavit he proposed a monthly amount of $1,103.13, though he concedes on appeal that the number he used for his gross income — the starting point of the calculation — was incorrect.

---

[26](...continued)
custody orders during deployment, after which custody reverts to the preexisting permanent schedule.  *See Faucett v. Vasquez*, 984 A.2d 460, 473-74 (N.J. Super. App. Div. 2009) (comparing statutory approaches in California, Florida, Michigan, Kentucky, Arkansas, Texas, Arizona, and Kansas).

[27]      The first sentence of AS 25.20.095(a) requires the superior court to make a custody award that maximizes John's contact with Aaron while protecting his best interests.  Aaron does not claim that the superior court failed to abide by this requirement, and the court's provisions for liberal visitation demonstrate an attempt to maximize Aaron's time with John.

[28]      Alaska R. Civ. P. 90.3(e)(1).

The number the court adopted instead was apparently proposed by Angelica. The record is not clear as to its source, nor does the transcript provide any insight.[29] The number appears in an unsigned Rule 90.3 affidavit, allegedly submitted by Angelica, purporting to show Aaron's adjusted income. Although Aaron agrees with the affidavit's statement of his gross income, he disputes Angelica's calculation of the required deductions, and we agree that these contain clear error.[30]

It is well established that the superior court must make adequate findings stating the basis for a decision that sets the amount of child support.[31] We cannot determine on the record before us how the superior court reached the amount it ordered

---

[29] The parents discussed permanent child support during the interim hearing, when they informed the court of their unofficial arrangement and the court responded that an order would be issued following trial. There was no subsequent discussion of permanent support; the only substantive discussion at trial pertained to past and interim payments. The custody trial focused almost exclusively on custody and visitation, with some discussion of the parents' employment.

[30] Aaron's excerpt of record on appeal includes a Rule 90.3 child support affidavit and a spreadsheet of figures, both unsigned. Although the excerpt identifies the documents as "attachments" to the superior court's child support order, the pages do not appear in the trial court record as transmitted to this court. The affidavit does, however, include the number $1,436.08 as the monthly child support payment, and in the absence of any other source for the number we assume that the superior court relied on it. But the affidavit contains a clear error: it identifies Aaron's gross annual income as $89,680.70 but calculates his annual federal income tax as $198.00. We note that this seems unlikely and results in a mistakenly small deduction for purposes of determining Aaron's net income.

[31] *See, e.g.*, *O'Connell v. Christenson*, 75 P.3d 1037, 1040 (Alaska 2003) ("A trial court has a duty to enter findings adequate for rational appellate review."); *Wright v. Gregorio*, 855 P.2d 772, 773 (Alaska 1993) (requiring adequate findings "so that a reviewing court may clearly understand the grounds on which the lower court reached its decision").

-12-                                                                      6793

Aaron to pay. We therefore remand the issue of child support to the superior court for clarification.

### 2. Subject to new findings on remand, Aaron may be required to pay interim child support.

As part of its decision on child support, the superior court ordered Aaron to pay child support for the interim period of March 2011 to January 2012, with extended visitation credit for October and November 2011. Aaron argues that because he and Angelica had equal custody during this interim period, "imposition of *any* child support upon Aaron was clear error without some reasoned explanation." But equal custody does not necessarily negate a child support obligation.

Under Alaska Civil Rule 90.3, child support is based on the parties' relative percentages of physical custody and their relative adjusted annual incomes.[32] The record in this case shows both that Aaron had physical custody of John less than fifty percent of the time during the interim period[33] and that there is a significant disparity between the parents' incomes. It was not an abuse of discretion for the superior court to award child support to Angelica for this period. However, when clarifying the findings on remand with regard to Aaron's adjusted income, the superior court should ensure that its order on interim support correctly accounts for Aaron's periods of physical custody.

---

[32] Alaska R. Civ. P. 90.3(a), (b)(1).

[33] The order provides that Aaron "shall receive an extended visitation credit for the months of October and November 2011." The record shows that John was in Angelica's custody from March 6, 2011 to July 29, 2011; August 1, 2011 to October 10, 2011; and December 27, 2011 to January 18, 2012, when the custody trial began. He was in Aaron's custody from July 29, 2011 to August 1, 2011 and from October 11, 2011 to December 27, 2011. On remand, the superior court may have to adjust the visitation credit to include the month of December.

**3. The superior court did not abuse its discretion by including a provision on past child support.**

The child support order provided that "[i]f there are child support issues that predate March 2011 either party may request the services of CSSD to resolve that issue." Aaron argues that this provision is improper in light of his agreement with Angelica on past support payments and that it "invites (indeed, encourages) further litigation." But we find no abuse of discretion; the superior court was merely clarifying the parties' legal rights with regard to past support. It is well established that a parental agreement on child support remains invalid until a court has reviewed it for adequacy under Civil Rule 90.3.[34] Angelica and Aaron agreed that their informal child support arrangement had never been judicially reviewed. Their agreement thus does not waive any right to child support that a court in the future finds to be past due. But since neither party voiced concern about past child support at trial, the superior court did not examine the issue; it simply advised the parents of their rights, and the advice it gave was correct.[35]

**C. The Superior Court Did Not Abuse Its Discretion In Awarding Angelica Interim Attorney's Fees.**

Aaron contends that Civil Rule 82, with its authorization of partial attorney's fees to the prevailing party, governed this case, and that the superior court

------

[34] *See, e.g.*, *Nix v. Nix*, 855 P.2d 1332, 1333-34 (Alaska 1993) (quoting *Cox v. Cox*, 776 P.2d 1045, 1048 n.6 (Alaska 1989)); *Bergstrom v. Lindback*, 779 P.2d 1235, 1237-38 (Alaska 1989) (citing *Cox*, 776 P.2d at 1048); *Cox*, 776 P.2d at 1048; *see also* Alaska R. Civ. P. 90.3(a), (e) (outlining methods of calculating child support obligation).

[35] Aaron claims that the judge "implicitly, if not expressly, concluded that Aaron's pre-litigation child support of [John] was adequate." But this conclusion is not reflected in the record. After clarifying that Angelica had no issues with past child support, the superior court did not discuss it again; the court simply explained that a child support order would be required to avoid "ambiguity" over "the proper amount" owed.

erred in awarding Angelica interim attorney's fees. We affirm the award because Angelica's request fell within the divorce exception to the rule.

The divorce exception provides that attorney's fees should be awarded in divorce proceedings on the basis of the "relative economic situations and earning powers of the parties, rather than on the prevailing party standard of Civil Rule 82."[36] The exception stems from the fact that there is generally no prevailing party in a divorce,[37] and it is meant to assure that both spouses have the means to litigate on an equal footing.[38] We have consistently applied this divorce exception to disputes "between unmarried individuals limited to the issues of child custody and support."[39] The exception does not apply to all cases between unmarried couples: "It should be reserved for cases that closely resemble divorce actions and for cases that involve disputes — such as disputes about custody or the initial division of property — for which it is of paramount importance that the parties be able to litigate on a 'fairly equal plane.' "[40]

This action involves an initial determination of child custody, and we have emphasized the "paramount importance" of allowing parents to litigate custody on an

---

[36]    *Bergstrom*, 779 P.2d at 1238 (citing *L.L.M. v. P.M.*, 754 P.2d 262, 263-64 (Alaska 1988); *Lone Wolf v. Lone Wolf*, 741 P.2d 1187, 1192 (Alaska 1987); *Cooke v. Cooke*, 625 P.2d 291, 293 (Alaska 1981)).

[37]    *L.L.M.*, 754 P.2d at 264 (citing *Cooper v. State*, 638 P.2d 174, 180 (Alaska 1981)).

[38]    *Lone Wolf*, 741 P.2d at 1192 (citing *Olsztyn v. Olsztyn*, 514 P.2d 498, 502 (Ariz. App. 1973); *In re Crabdree's Marriage*, 523 P.2d 471, 472 (Colo. App. 1974)).

[39]    *Bishop v. Clark*, 54 P.3d 804, 814 (Alaska 2002); *see also Bergstrom*, 779 P.2d at 1238 (extending the divorce exception to unmarried individuals).

[40]    *Sanders v. Barth*, 12 P.3d 766, 769 (Alaska 2000) (quoting *Lone Wolf*, 741 P.2d at 1192).

equal plane.[41]  The fact that Aaron and Angelica's relationship was short does not lessen the importance of this goal.  Nor does the fact that this custody action was initiated four years after John's birth, as this was the first time the parties addressed his custody in court.[42]  The superior court found "[t]he disparity in the parties' financial circumstances justifies the interim fee award"; the record supports that finding; and Aaron does not argue on appeal that the disparity does not exist.  We therefore affirm the superior court's award of interim attorney's fees.

## V.    CONCLUSION

We AFFIRM the superior court's judgment on child custody and attorney's fees.  On the issue of child support, we REMAND the case to the superior court for reconsideration and clarification of its findings.

---

[41]    *Koller v. Reft*, 71 P.3d 800, 809 (Alaska 2003)  (quoting *Sanders*, 12 P.3d at 769) (internal quotation marks omitted).

[42]    Aaron correctly notes that we have previously refused to extend the divorce exception to cases between unmarried parents when those actions were filed several years after the children were born.  But those cases did not involve custody.  *See Sanders*, 12 P.3d at 769  ("[T]his case is 'strictly about money'; it does not involve property division, custody or visitation issues."); *Rubright v. Arnold*, 973 P.2d 580, 581-82 (Alaska 1999) (stating that the case involves only questions of paternity and child support).  Aaron also cites our refusal to extend the exception in *B.J. v. J.D.*, but that case is markedly different: it involved the modification of a prior custody judgment and an award of custody to a non-biological parent.  950 P.2d 113, 118-19 (Alaska 1997).  This is the initial litigation over John's custody.  Were this an action seeking to modify an existing custody order, different standards would apply.  *See, e.g.*, *id*. at 119 (holding that when awarding attorney's fees in custody modification actions, the superior court must consider parents' relative economic positions and good faith).