*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| GARY JAY HOUSTON, | ) | |
| | ) | Supreme Court No. S-15232 |
| Appellant, | ) | |
| | ) | Superior Court No. 3PA-10-00959 CI |
| v. | ) | |
| | ) | O P I N I O N |
| MEREDITH JANE WOLPERT, | ) | |
| | ) | No. 6950 – September 5, 2014 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Gregory Heath, Judge.

Appearances: Regina Largent, Largent Law, LLC, Soldotna, for Appellant. John Parsi, Law Offices of Kenneth Goldman, PC, Palmer, for Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

BOLGER, Justice.

## I.    INTRODUCTION

Upon dissolution of their marriage, a father and a mother agreed to give primary custody to the mother and "open and liberal visitation" to the father. The father filed a motion for modification of custody, alleging the mother had unreasonably restricted his visitation. The superior court found the mother had been uncooperative, but concluded it was in the best interests of the child to remain in the mother's custody with a specific visitation schedule for the father. The father appeals the superior court's

decision, arguing the superior court abused its discretion when it did not award him custody. He also appeals the superior court's denial of his motion for attorney's fees and costs. We conclude there was no abuse of discretion in the custody decision, but we must remand the attorney's fee issue for further findings.

## II.    FACTS AND PROCEEDINGS

Gary Houston and Meredith Wolpert dissolved their marriage in April 2010. They agreed Meredith would have primary custody of their daughter, born in 2007, subject to Gary's "open and liberal" visitation.

Meredith moved to Soldotna about seven months after the dissolution. Once she moved, Meredith restricted Gary's visits to only one weekend a month in Soldotna. Gary could not afford many overnight visits in Soldotna, which meant he could only visit his daughter for the day. A little more than two years after the dissolution, Gary moved to Soldotna to be closer to his daughter. But even though Gary now lived in the area, Meredith only allowed one weekend overnight visit per month.

In August 2012 Gary filed a motion to modify custody. Gary sought primary physical and sole legal custody and alleged Meredith "arbitrarily impose[d] severe limitations upon [his] visitation" — enough "to substantially interfere with the parent-child relationship." He also sought temporary orders asking for their daughter to have equal access to both parents in the interim.

The parties disputed the circumstances of their interactions and the reasons the visitations were so infrequent. Gary argued Meredith interfered with his visitation by refusing to let him see their daughter and by refusing to respond to his communications. Meredith attributed the difficulty of scheduling visitation to conflicting availability and implied Gary did not make enough of an effort to see their daughter.

The superior court referred the matter to a family court master and scheduled a hearing regarding interim visitation. At the hearing, the master heard

arguments from both sides and found that, while the parties needed a visitation schedule, there was no need for a modification of custody.

Gary filed an objection to the master's report, and the superior court rejected the master's recommendations. The superior court determined Gary had shown a substantial change in circumstances and was "entitled to a hearing to address the best interests of [the child]." The court again referred the case to the master to hold a hearing on the motion to modify custody.

At the end of the custody modification hearing, the master expressed concern about Meredith's unreasonable attitude toward Gary's visitation. But the master ultimately concluded Meredith should retain primary custody because she had a better history of providing the child with continuity and a stable home.

In his written findings, the master stated Gary had not been an involved parent, although Gary's parenting had improved. The master noted Meredith had been the child's primary caregiver for the child's entire life, and opined that Meredith could provide more appropriate boundaries and structure for the child. The master found Meredith had provided a stable environment for her daughter. The master had concerns about Meredith's willingness to facilitate a relationship between Gary and their daughter because Meredith had exercised "excessive control" and displayed "unreasonable concerns" over visitation. But the master recognized Meredith had provided Gary with visitation consistent with the interim visitation plan and seemed diligent about following rules. The master also recommended Meredith retain legal custody since Gary and Meredith did not seem to communicate or cooperate well with one another.

Gary filed an objection to the master's recommendations. The superior court concluded Gary's arguments "center[ed] on the concern that Meredith ha[d] willfully and consistently interfered with his custodial time in the past, including denying him overnight visitation for over 300 consecutive days." The court agreed with the

master that continuing primary custody with Meredith would provide the child with stability and would best meet her "physical, emotional, and spiritual needs." The superior court ordered visitation on two weekends a month, from Thursday evening to Sunday evening, and every Wednesday evening from 5:00 p.m. to 7:00 p.m.

Following the superior court's decision, Gary filed a motion for attorney's fees and costs. The superior court denied Gary's motion for fees and costs without making specific findings. Gary now appeals to this court.

## III. STANDARD OF REVIEW

We will uphold a superior court's custody and visitation determinations "unless the record shows that its controlling findings of fact are clearly erroneous or the court abused its discretion."[1] "A finding of fact is clearly erroneous when a review of the record leaves us with a definite and firm conviction that a mistake has been made."[2] And a superior court abuses its discretion when it "consider[s] improper factors in determining custody, fail[s] to consider statutorily mandated factors, or assign[s] disproportionate weight to certain factors while ignoring others."[3]

## IV. DISCUSSION

The superior court has broad discretion when determining the best interests of a child in a custody modification.[4] When considering statutory best interests factors,

> the trial court need not make express findings on all statutory
> factors; instead, its findings "must either give us a clear

---

[1]     *Borchgrevink v. Borchgrevink*, 941 P.2d 132, 134 (Alaska 1997) (citing *Evans v. Evans*, 869 P.2d 478, 479 (Alaska 1991)).

[2]     *Blanton v. Yourkowski*, 180 P.3d 948, 951 (Alaska 2008) (quoting *Borchgrevink*, 941 P.2d at 134) (internal quotation marks omitted).

[3]     *Id.* (citing *Borchgrevink*, 941 P.2d at 134).

[4]     *Rego v. Rego*, 259 P.3d 447, 452 (Alaska 2011); *see* AS 25.24.150(c).

indication of the factors which the superior court considered important in exercising its discretion or allow us to glean from the record what considerations were involved."[5]

In this case, the master identified three factors that were particularly important in determining custody: "the capability and desire of each parent to meet [the child's] needs";[6] "the length of time the child had lived in a stable, satisfactory environment and the desirability of maintaining continuity";[7] and "the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child."[8] Gary appeals the superior court's findings on the stability and continuing relationship factors as well as the court's decision on the award of attorney's fees.

### A. The Court Did Not Abuse Its Discretion When It Concluded The Stability Factor Favored The Mother.

In a custody determination, the superior court must consider "the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity."[9] The court, in its stability analysis, may consider circumstances affecting the child's geographic, emotional, and relational environment.[10] In this case,

---

[5] *Chesser v. Chesser-Witmer*, 178 P.3d 1154, 1158 (Alaska 2008) (quoting *Smith v. Weekley*, 73 P.3d 1219, 1225 (Alaska 2003)).

[6] AS 25.24.150(c)(2).

[7] AS 25.24.150(c)(5).

[8] AS 25.24.150(c)(6).

[9] AS 25.24.150(c)(5).

[10] *See*, *e.g.*, *Blanton v. Yourkowski*, 180 P.3d 948, 954 (Alaska 2008) ("The continuity factor includes both emotional stability and geographic stability."); *Melendrez v. Melendrez*, 143 P.3d 957, 963 (Alaska 2006) (quoting *McQuade v. McQuade*, 901 (continued...)

the master found Meredith had given the child a "stable, satisfactory environment for a long time," and stated that it was "desirable to maintain this continuity." The master also noted Meredith had been the child's primary caregiver, and that she had provided a stable home for a longer period of time than Gary had.

Gary challenges the superior court's findings on the stability factor. He argues the court abused its discretion because it never "offered any commentary or findings on [Gary's] ability to maintain stable and satisfactory relations between himself and the child." He relies on *Meier v. Cloud* to contend Alaska law "commands a comprehensive inquiry into each parent's respective ability to maintain stable and satisfactory relations between themselves and the child."[11]

But *Meier* is not directly applicable here. In *Meier*, the parents shared legal and physical custody and lived in the same community before the mother decided to move to Seattle with her new husband.[12] We explained that when parents transition from living in the same community and sharing custody to one relocating to another state, "a court considering the child's need for continuity and stability . . . must examine not only the desirability of maintaining geographical continuity, but also the importance of

---

[10](...continued)
P.2d 421, 426 (Alaska 1995)) (upholding the court's decision to weigh sibling relationship as an essential component of maintaining the emotional continuity and stability of a child's home); *Barrett v. Alguire*, 35 P.3d 1, 9 (Alaska 2001) (upholding the finding that "maintaining the children's relationships with their school, community of friends and family, the cultural community, and their mother outweighed maintaining the relationship with their father.").

[11]    34 P.3d 1274, 1279 (Alaska 2001) (quoting *McQuade*, 901 P.2d at 426) (internal quotation marks omitted).

[12]    *Id.* at 1275.

maximizing relational stability."[13] And in that context, the continuity and stability factor requires an examination of "each parent's respective ability to maintain stable and satisfactory relations between themselves and the child."[14]

In *Evans v. Evans*, we held that the stability and continuity factor should be assessed not only in relation to each parent "but in relation to the totality of the circumstances [the children] were likely to encounter in their respective parents' homes."[15] We concluded it was not an abuse of discretion to consider the potentially negative emotional consequences the children might have suffered if they had been required to live in their mother's new marital residence.[16] Similarly in this case, the superior court considered that the child had been in Meredith's care for most of her life and that this stability would be disrupted if custody were awarded to Gary. This consideration was not unreasonable.

In a related argument, Gary contends the court improperly gave preference to Meredith's role as the primary caregiver. Gary correctly notes that there is no automatic custody preference for the primary caregiver.[17] But the superior court may properly consider which parent was the child's primary caregiver as a circumstance

---

[13]    *Id.* at 1279.

[14]    *Id.* (quoting *McQuade*, 901 P.2d at 426) (internal quotation marks omitted).

[15]    869 P.2d 478, 482 (Alaska 1994).

[16]    *Id.* at 483.

[17]    *Blanton v. Yourkowski*, 180 P.3d 948, 953 (Alaska 2008) (citing *Elliott v. Settje*, 27 P.3d 317, 320 (Alaska 2001)); *I.J.D. v. D.R.D.*, 961 P.2d 425, 430 (Alaska 1998); *Evans*, 869 P.2d at 483 n.4; *McDanold v. McDanold*, 718 P.2d 467, 470 n.4 (Alaska 1986).

relevant to the best interests analysis.[18]  In this case, Meredith has had primary custody since the dissolution of the marriage and has provided a stable, satisfactory home.  We find no abuse of discretion in the court's consideration of Meredith's status as a primary caregiver.

**B.     The Court Did Not Abuse Its Discretion When It Weighed The Continuing Relationship Factor.**

Gary argues the court abused its discretion by failing to give adequate weight to the "continuing relationship" factor: "the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child."[19]  On this issue, the master expressed

> concerns with regards to Meredith's being willing and able to facilitate and encourage a close and continuing relationship between Gary and [his daughter].  Prior to the September 7, 2012 hearing, Meredith did not make visitation easy for Gary. She exercised excessive control and unreasonable concerns for [the child's] safety with Gary.

The superior court adopted this finding and further stated Meredith had "manipulated the process" and "restricted Gary's visitation."

Gary primarily argues this factor should have been dispositive, and the court should have granted Gary primary physical custody based on Meredith's misconduct.  We have held that "[t]he superior court abuses its discretion if it . . . fails to consider statutorily mandated factors, or assigns disproportionate weight to particular factors while ignoring others."[20]  But there is no rule giving automatic preference to any

---

[18]     *See Veselsky v. Veselsky*, 113 P.3d 629, 635 (Alaska 2005).

[19]     AS 25.24.150(c)(6).

[20]     *Nancy M. v. John M.*, 308 P.3d 1130, 1133 (Alaska 2013) (quoting
(continued...)

single factor. Rather, the superior court's findings must clearly indicate which factors it "considered important in exercising its discretion or allow us to glean from the record what considerations were involved."[21]

In this case, the master clearly identified the best interests factors he considered most important. And Gary does not challenge the court's finding that Meredith followed the interim visitation order. Based on this finding, the superior court could have reasonably concluded that a permanent visitation schedule would be sufficient to ensure that Meredith did not repeat her previous misconduct and that she would facilitate Gary's relationship with the child. We conclude there was no abuse of discretion on this issue.[22]

### C. The Court Did Not Abuse Its Discretion In Other Aspects Of The Custody Order.

Gary makes several related arguments challenging the superior court's custody and visitation determinations. First, Gary argues the court abused its discretion when it denied him primary custody because the court had found a change in circumstances based on the parties' inability to communicate about or agree on visitation. But the court's conclusion that there was a change in circumstances only provided the basis for a full custody modification hearing. This conclusion did not control the best

---

[20](...continued)
*Stephanie F. v. George C.*, 270 P.3d 737, 745 (Alaska 2012)) (internal quotation marks omitted).

[21]     *Chesser v. Chesser-Witmer*, 178 P.3d 1154, 1158 (Alaska 2008) (quoting *Smith v. Weekley*, 73 P.3d 1219, 1225 (Alaska 2003)) (internal quotation marks omitted).

[22]     We are not convinced by Gary's argument that the superior court committed clear error when it found Meredith to be uncooperative rather than intentionally interfering with Gary's visitation. The superior court's findings are supported by the record.

interests analysis; at that stage of the analysis, the inability of the parents to communicate was simply one of many statutory factors the court was required to consider.

Gary also argues the superior court abused its discretion when it denied him joint legal custody. But Gary did not request joint custody during the custody modification proceeding; he requested sole legal custody. And even if Gary had requested joint custody, such an award "is only appropriate when the parents can cooperate and communicate in the child's best interest."[23] Joint legal custody may be denied if the parents cannot communicate effectively.[24] In this case, the record supports the master's finding that the parties could not cooperate sufficiently to allow joint custody.

Gary also argues the visitation schedule is unreasonably restrictive. The court-ordered schedule consists of Wednesday evening and weekend visits. This schedule was an increase in Gary's visitation, and it reasonably addressed the court's concern with stability. We conclude this schedule was not an abuse of discretion.

D.     **The Court Should Have Explained Why It Denied Gary's Motion For Attorney's Fees.**

Gary argues the court erred when it denied his motion for attorney's fees. Under AS 25.20.115, the court must "consider the relative financial resources of the parties and whether the parties have acted in good faith" when making an attorney fee

---

[23]     *Farrell v. Farrell*, 819 P.2d 896, 899 (Alaska 1991).

[24]     *See Co v. Matson*, 313 P.3d 521, 524-26 (Alaska 2013) (awarding sole legal custody to the mother even though both were parents of "considerable talent and ability" because the mother and the father could not communicate with each other); *Jaymot v. Skillings-Donat*, 216 P.3d 534, 540 (Alaska 2009) (affirming that joint legal custody was inappropriate because both parents were "arrogant," "selfish," and could not communicate with each other); *Littleton v. Banks*, 192 P.3d 154, 161 (Alaska 2008) (upholding award of sole legal custody because communication was poor).

award. To that end, the "court must make explicit findings as to the parties' relative financial resources and whether the parties acted in good faith."[25] Gary argues the superior court erred because it denied his motion for attorney's fees without providing any explanation.

Our case law has thus far required explicit findings when making an *award* of attorney's fees under this statute.[26] But we have not previously required the superior court to make similar findings when it *denies* such a motion. We now conclude these findings are ordinarily necessary when the superior court denies a motion for attorney's fees, so that we may properly review the court's decision.[27]

In his motion, Gary argued Meredith had much greater financial resources. He also argued Meredith threatened to ruin him financially, and he submitted evidence at the modification hearing that supported this claim. Gary also noted the court found Meredith manipulated the process to restrict his visitation. He argues this finding is equivalent to a conclusion that Meredith engaged in bad faith behavior, which would support an award of attorney's fees in his favor.

From this record, we cannot determine whether the superior court actually considered the issues Gary now raises on appeal. We remand this matter to the superior court for findings regarding Gary's attorney's fees request.

---

[25] *Collier v. Harris*, 261 P.3d 397, 410 (Alaska 2011) (quoting *S.L. v. J.H.*, 883 P.2d 984, 985 (Alaska 1994)) (internal quotation marks omitted).

[26] *See, e.g., id.*; *Smith v. Groleske*, 196 P.3d 1102, 1108 (Alaska 2008); *S.L.*, 883 P.2d at 985-86.

[27] We have come to the same conclusion in cases involving the denial of attorney's fees under Alaska Civil Rule 82 and Alaska Appellate Rule 508. *See Conway, Inc. v. Ross*, 627 P.2d 1029, 1032 (Alaska 1981); *Curran v. Haistreiter*, 579 P.2d 524, 530-31 (Alaska 1978).

## V.    CONCLUSION

We REMAND this matter to the superior court for further proceedings on Gary's request for attorney's fees and costs. We AFFIRM on all remaining issues.