*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| PAULA FRACKMAN, | ) | |
| | ) | Supreme Court No. S-15124 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-05-04155 CI |
| v. | ) | |
| | ) | O P I N I O N |
| RICK ENZOR, | ) | |
| | ) | No. 6918 – June 20, 2014 |
| Appellee. | ) | |
| _____ | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Mark Rindner, Judge.

Appearances: Paula Frackman, pro se, Anchorage, Appellant. Rick Enzor, pro se, Anchorage, Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

STOWERS, Justice.

## I.      INTRODUCTION

This appeal arises from a father's motion to modify the custody arrangement of the parties' two children. The superior court awarded primary physical and sole legal custody to the father after hearing testimony from a custody investigator and both parties. The mother appeals. She argues that the court abused its discretion because it modified the custody order based on evidence that existed when the court denied another motion to modify custody five years earlier. But because there was new

evidence of substance abuse and untreated mental health issues, the court did not err by concluding there was a material change in circumstances and, after conducting an evidentiary hearing, did not abuse its discretion by awarding primary physical and sole legal custody to the father.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

Rick Enzor and Paula Frackman were married in 1996 and have two children: Stewart, born in 1999, and Gabriel, born in 2004.[1] Paula has a long history of mental illness and substance abuse issues, and has been on and off medication for much of her life. In 2004 she was referred to Dr. Eileen Ha, who diagnosed her with bipolar disorder "with most recent depression, polysubstance dependence of cocaine and alcohol, with history of anorexia as well as Cluster B[2] personality traits." She attended a program for cocaine dependence around this same time. In 2005 Paula unilaterally stopped taking her medication and discontinued therapy; she explained, "It's the happiest I've been!"

In 2004 Rick was charged with assault after Paula reported that he broke her vehicle's side mirror while she was leaving after the two fought. Paula reported that it was an "ongoing situation," and that she was also applying for a domestic violence restraining order. The charges were eventually dismissed, and Rick took both an anger management class and a parenting class.

The couple divorced in 2005. At the time, each parent had concerns about the other parent. Rick was concerned with Paula's substance abuse, and Paula was

---

[1]    Pseudonyms have been used for the children to protect their privacy.

[2]    Cluster B personality traits include borderline personality disorder and narcissistic personality disorder.

worried about Rick's anger management issues and prior alleged domestic violence. Nevertheless, the parties agreed to share both physical and legal custody, and the court awarded shared physical and legal custody of the children.

In 2006 the parties both moved to modify the custody order, but the superior court denied their motions. The court found that "there has not been a substantial change of circumstances warranting a hearing. Mr. Enzor essentially rehashes arguments about Ms. Frackman's . . . alcohol use he initially made when this case was first litigated." And the court saw no evidence of alcohol use or its impact on the children, noting that the older child, Stewart, was doing well in school.

## B.    Proceedings

In early March 2011 Rick petitioned for a domestic violence protective order against Paula on behalf of the children. The petition was based on allegations that Paula "shoved" Stewart and Gabriel to the ground, was drinking while she had custody of the children, and was feeding Gabriel foods to which he was allergic.[3]    On

---

[3]    Gabriel's possible food allergies are a contentious point between Paula and Rick. A blood test done by one doctor was negative for food allergies, while a patch test done in 2010 by an allergy specialist, Dr. Teresa Neeno, was positive for trace allergies to many different types of food. Another patch test done a year later, in 2011, was negative for many of the same foods. At trial, Rick testified that based on Gabriel's behavior, he believed Gabriel still had allergies to corn. Paula has questioned Gabriel's allergies since the concern arose in 2008.

Rick and his second wife, Shirley, moved Gabriel to a "clean diet" per Dr. Neeno's recommendations and asked Paula to do the same. Paula did not cooperate and continued to feed Gabriel foods that were on the list of those to avoid. The parties kept a food journal for Gabriel, but the court found that Paula falsified the journal to cover up the foods she was feeding him.

March 31, 2011, Rick filed a motion to modify custody based on many of the same allegations as in his petition. In addition, he alleged that Paula was not taking medication for her mental health issues, which, coupled with her alcoholism, put the children at risk. On April 11, 2011, the superior court ordered a limited custody investigation to interview the children about the alleged domestic violence.

On April 20, 2011, the superior court reviewed the report of the interview with the children and heard testimony regarding the petition for a protective order. The court found that there was new evidence that Paula's alcohol use might lead her to physically abuse the children. As a result, the parties agreed to a full custody investigation and a new interim custody order. The court ordered that while the full custody investigation was pending, shared physical and legal custody would continue, and Paula was ordered to begin twice-weekly urine ethylglucuronide (EtG) testing for alcohol.

Despite the new interim custody order, Paula did not take any EtG tests the first week that she had custody of the children. Gabriel missed the opening night (and only evening performance) of the kindergarten play where he had the lead role, and Stewart missed two of his baseball practices. It is unknown whether Paula was using alcohol without the EtG tests; however, the implication from the record is that her alcohol use caused the children's absences at their extracurricular activities. The superior court discontinued Paula's physical custody and required that she show four weeks of negative EtG tests before she could resume shared custody. In the meantime, the court allowed her to have supervised visitation with the children at dinnertime and during extracurricular activities. Paula promptly violated the supervision condition twice — once by using her boyfriend as a supervisor, and another time by having no supervisor at all. Once Paula had taken four weeks of EtG tests, the court allowed shared physical custody to continue.

After completing roughly six months of EtG testing, Paula unilaterally stopped taking the EtG tests. At this point, she had produced one positive sample, three dilute samples, and had missed many tests.[4] The custody investigator alerted the superior court to Paula's unilateral cessation of the EtG tests, and the court immediately terminated shared physical custody and granted Rick primary physical custody. The court ordered that Paula could move to resume shared physical custody if she provided the court with three consecutive, negative EtG test results.

Paula waited three weeks, then took three EtG tests back-to-back on January 24, 25, and 26, 2012. The superior court found that taking three EtG tests back-to-back did not satisfy its order, and denied Paula's motion to return to shared physical custody. The court ordered that Paula could have supervised visitation with the children. At this time the custody investigator also informed the court that the boys had reported episodes of abuse by Paula — multiple times when Paula had pushed Gabriel outside without a coat as punishment, and an incident where she threw a glass of water in Gabriel's face.

In March 2012 Stewart was invited to play with an elite baseball team and needed a passport to travel to Puerto Rico. Rick attempted to get him one, but Paula would not cooperate. After a slew of highly-charged emails, Rick moved for, and was granted, interim sole legal custody in order to obtain the passport. When the court asked Paula what her motivation was for refusing to cooperate, she stated, "[I was] just being feisty I guess."

---

[4]     Rick states that she missed nine EtG tests, while Paula omits reference to any missed tests. Stewart told the custody investigator that Paula began drinking again sometime around Thanksgiving 2011.

## C.    The Psychological Evaluation And The Custody Investigator's Report

In December 2011 the superior court ordered Paula to undergo a psychological evaluation. Paula met with psychologist Dr. Richard Lazur three times during the pendency of the custody investigation. Dr. Lazur diagnosed Paula as having bipolar disorder with "recurrent major depressive episodes with hypomanic episodes, mild to moderate"; "[p]ersonality disorder . . . with narcissistic and borderline features"; a caffeine disorder, overindulgence; and alcohol abuse. He found that "she presents the characteristics of denial and minimization frequently found in those who abuse or are dependent on alcohol." Dr. Lazur concluded that "[i]t is unlikely that . . . she is going to do what [the court] tell[s] her."

In her custody report, the custody investigator strongly recommended that Rick be granted primary physical and sole legal custody. She had "serious concerns regarding the children's emotional and physical safety in the care of their mother." These concerns were mainly based on Paula's unwillingness to engage in treatment for her mental problems, her insistence upon using alcohol, and her unwillingness to follow court orders. The custody investigator also noted that "[p]rior to the change to primary custody with Rick, the boys had been having behavioral and academic problems at school." After the change, "[t]his [was] no longer the case for either boy." The custody investigator recommended that visitation be professionally supervised because Paula's "conditions are too complex, and the relationship with her sons too strained" to have supervision by a layperson.

The superior court held an evidentiary hearing on February 26, 2013. Paula did not rebut any part of the custody investigator's or Dr. Lazur's reports, but simply made vague statements that she would work on things in the future. She testified that she began seeing a therapist a month prior to trial, but failed to give the therapist either

Dr. Lazur's or the custody investigator's reports. She also reiterated her belief that being off medication made her the "happiest [she has] been in years."

The superior court found that Paula had longstanding issues with substance abuse and untreated bipolar disorder, that her actions did not show a willingness to engage, and that her failure to take EtG tests was significant. The court adopted the custody investigator's recommendations and awarded primary physical and sole legal custody to Rick with professionally supervised visitation for Paula on Sundays. The court allowed Rick "[to] authorize [Stewart] to attend baseball training, tournaments, and related activities" on Sundays despite a conflict in visitation because the court found it to be in Stewart's best interest to continue to pursue baseball. Paula appeals.

## III. STANDARD OF REVIEW

We review the superior court's conclusion that there has been a material change in circumstances de novo.[5]

"The trial court has broad discretion in child custody decisions."[6] We will reverse the superior court's decision when "the record shows an abuse of discretion or if controlling factual findings are clearly erroneous."[7] An abuse of discretion exists where the superior court "considered improper factors in making its custody determination, failed to consider statutorily mandated factors, or assigned

---

[5] *Nelson v. Nelson*, 263 P.3d 49, 52 (Alaska 2011); *see Barrett v. Alguire*, 35 P.3d 1, 5-6 (Alaska 2001).

[6] *Veselsky v. Veselsky*, 113 P.3d 629, 632 (Alaska 2005) (citing *Jenkins v. Handel*, 10 P.3d 586, 589 (Alaska 2000)).

[7] *J.F.E. v. J.A.S.*, 930 P.2d 409, 411 (Alaska 1996) (citing *Farrell v. Farrell*, 819 P.2d 896, 898 (Alaska 1991)); *see also Hamilton v. Hamilton*, 42 P.3d 1107, 1111 (Alaska 2002).

disproportionate weight to particular factors while ignoring others."[8] "A factual finding is clearly erroneous when a review of the record leaves the court with a definite and firm conviction that the superior court has made a mistake."[9]

## IV.    DISCUSSION

Paula argues that the superior court abused its discretion when it awarded primary physical and sole legal custody to Rick, and that it erred by finding a substantial change in circumstances from its denial of the 2006 motions to modify custody. She also contends that the court did not make adequate findings to support supervised visitation, and that the court abused its discretion when it allowed "baseball to come before [her] visitation rights."[10]

### A.    The Superior Court Did Not Err By Concluding That There Had Been A Substantial Change In Circumstances.

A court may modify a custody order only if there is a substantial change in circumstances and the modification is in the best interest of the child.[11] The change in

---

[8]    *Siekawitch v. Siekawitch*, 956 P.2d 447, 449 (Alaska 1998) (quoting *Borchgrevink v. Borchgrevink*, 941 P.2d 132, 134 (Alaska 1997)) (internal quotation marks omitted).

[9]    *Fardig v. Fardig*, 56 P.3d 9, 11 (Alaska 2002) (quoting *Siekawitch*, 956 P.2d at 449) (internal quotation marks omitted).

[10]    Paula also appears to argue that the custody investigator had a conflict of interest because she was the custody investigator during the divorce of Rick's second wife, Shirley. But Paula forfeited this argument by not making it to the superior court. *See Hymes v. DeRamus*, 222 P.3d 874, 889 (Alaska 2010) (holding that a party cannot bring an argument for the first time on appeal). Paula further argues that the superior court did not fully consider the evidence, but the court carefully reviewed the evidence before it and weighed all of the relevant factors.

[11]    *Hamilton*, 42 P.3d at 1115 (citing *Cooper v. State*, 638 P.2d 174, 179 (Alaska 1981)); *Barrett v. Alguire*, 35 P.3d 1, 5 (Alaska 2001) (quoting

circumstances is measured "relative to the facts and circumstances that existed at the time of the prior custody order that the party seeks to modify."[12]  And the parent moving for a modification bears the burden of proving this change.[13]

Paula argues that the court wrongfully allowed "re-litigation of past allegations," and that "each and every statement or accusation made by [Rick] to re-open this case has been addressed."  She points to the court's dismissal of Rick's 2006 motion to modify custody where the court stated, "Mr. Enzor essentially rehashes arguments about Ms. Frackman's . . . alcohol use he initially made when this case was first litigated."  Paula's arguments are unavailing because there was ample new evidence following the 2005 custody order.  Because the evidence of alcohol abuse and untreated mental health issues created a substantial change in circumstances affecting the children, the court did not err in considering whether custody should be modified.

Rick, the custody investigator, and Dr. Lazur all raised concerns about Paula's ongoing substance abuse, and both children were struggling in school. Furthermore, there were allegations of physical abuse by Paula against the children — multiple incidents where Paula put Gabriel outside in the snow as punishment, and an incident where she threw a glass of water in Gabriel's face.  The updated mental health evaluation confirmed Paula's bipolar disorder diagnosis, which both the custody investigator and Dr. Lazur believed would be harmful to the children if left untreated. Thus, the superior court did not err by concluding that there had been

---

[11](...continued)
AS 25.20.110(a)).

[12]     *Barrett*, 35 P.3d at 5-6 (quoting *Jenkins v. Handel*, 10 P.3d 586, 589 (Alaska 2000)) (internal quotation marks omitted).

[13]     *Id.* (citing *Harrington v. Jordan*, 984 P.2d 1, 3 (Alaska 1999)).

a substantial change in circumstances from the court's initial shared custody order in 2005.

**B.  The Superior Court Did Not Abuse Its Discretion When It Awarded Primary Physical And Sole Legal Custody To Rick.**

Once there has been a substantial change in circumstances affecting the children, the superior court must make a custody determination that is in the best interests of the children.  There are nine potentially relevant factors that the court must consider when determining the best interests of the children.[14]  These factors include

> the needs of the child; each parent's ability and desire to meet those needs; the child's preference, if he or she is old enough to have one; the love and affection between the child and each parent; the stability and continuity of the child's environment; the willingness of each parent to facilitate the child's relationship with the other parent; any domestic violence or child abuse; any substance abuse that directly affects the child; and other factors that the court deems pertinent.[15]

Paula argues that "[t]he [s]uperior [c]ourt made a mistake when it decided to award temporary and subsequent sole legal and physical custody of [the] children . . . Rick."  Because the court carefully weighed the evidence in light of the statutory factors, the court did not abuse its discretion by modifying custody.

Here, the superior court did not abuse its discretion by considering improper factors, assigning disproportionate weight to factors, or failing to consider the statutorily mandated factors.[16]  The court addressed each factor in depth, finding three

---

[14]  AS 25.24.150(c); *Park v. Park*, 986 P.2d 205, 206 (Alaska 1999).

[15]  *Barrett*, 35 P.3d at 5 (citing AS 25.24.150(c)).

[16]  *See Siekawitch v. Siekawitch*, 956 P.2d 447, 449 (Alaska 1998).

factors particularly important.[17] The court noted that both parents have the desire to meet the needs of the children, but that Paula is less capable due to her mental health issues. The court found persuasive Paula's unwillingness to cooperate in obtaining a passport for Stewart and keeping an accurate food journal for Gabriel. The court also considered the stability factor and noted that the children had been doing poorly in school when the parents shared physical custody, but after Rick assumed primary physical custody they "blossom[ed]." The court found it desirable to maintain this stability. And, paramount to its decision, the court found that Paula has a history of untreated substance abuse and bipolar disorder. The court credited Dr. Lazur's statements that untreated bipolar disorder can have a negative impact on children. It further found that Paula's alcohol abuse created a "substantial risk for the children." The court's findings are amply supported in the record.

Further, the superior court clearly indicated the factors it considered important in exercising its discretion. The court carefully considered how each parent's behavior and likely future behavior would affect the children. And the court's consideration of substance abuse and mental health in greater detail was warranted as these issues went to the heart of the case. The court did not abuse its discretion in awarding primary physical and sole legal custody to Rick.[18]

---

[17] The superior court found "that there is no domestic violence in this case that would trigger the rebuttable presumption in AS 25.26.150(g)" because Paula's allegations against Rick occurred before the superior court's custody order in 2005, the criminal charges were dismissed, and there was no evidence that Rick continued to use corporal punishment against the children.

[18] Paula contends that the superior court violated her Fourteenth Amendment rights when it ordered a psychological evaluation of her and not of Rick as well. This argument is waived because Paula did not raise it in the superior court. Paula never objected to the evaluation or argued that Rick should undergo one as well.

**C.    The Court Made Sufficient Findings To Support Supervised Visitation.**

Unsupervised visitation by parents is "the norm."[19]  If a court orders supervised visitation, its decision "must be supported by findings that specify how unsupervised visitation will adversely affect the child's physical, emotional, mental, religious, and social well-being."[20]  Paula argues that the superior court did not make specific findings to support its imposition of supervised visitation.

Paula's argument is unpersuasive because the superior court made ample findings regarding professionally supervised visitation. The court's reasons for imposing supervised visitation are clear from the record.[21]  The court repeatedly noted the danger to the children due to Paula's untreated bipolar disorder and alcohol abuse.  And the court noted Paula's repeated inability to follow orders and engage in treatment.  The court imposed professionally supervised visitation because Paula's untreated mental health problems were "too complex and her relationship with her boys too strained" to have anything other than professionally supervised visitation.  Because it is clear from the record why the court imposed supervised visitation, and because the court's findings on professionally supervised visitation encompass the need for supervision, the court's failure to make express findings in these unique circumstances does not require reversal or remand for further factual findings in support of the supervision order.

---

[19]    *Fardig v. Fardig*, 56 P.3d 9, 14 (Alaska 2002) (quoting *J.F.E. v. J.A.S.*, 930 P.2d 409, 413-14 (Alaska 1996)).

[20]    *J.F.E.*, 930 P.2d at 413-14.

[21]    *R.M. v. S.G.*, 13 P.3d 747, 753 (Alaska 2000) ("[T]he superior court in this case provided ample specific findings about the need to protect the children from further emotional damage.").

**D.	The Court Did Not Abuse Its Discretion By Accommodating Stewart's Baseball Schedule.**

In its order, the superior court noted that "it appears that the parties' older son is a gifted athlete and may have a chance to play baseball professionally, or at least obtain a college scholarship." In light of Stewart's opportunities, the court allowed Rick "[to] authorize [Stewart] to attend baseball training, tournaments, and related activities" on Sundays even though Paula's visitation was also ordered for Sundays. The court provided that Paula would be able to "reasonably make up any missed visits" on other days of the week.

Paula contends that "allowing baseball to come before [her] visitation rights [was] ludicrous." But the superior court properly concluded in this case that Stewart's best interests — here, developing his baseball skills and eventually his potential to become an accomplished athlete — took precedence over Paula's right to have visitation on Sundays. Paula will not miss a single visit so long as she is regularly exercising her visitation rights.[22] Given Stewart's stated "goal . . . to be a college and then MLB pitcher" and the court's finding that this goal is a realistic possibility — a finding supported by the record — it was not an abuse of discretion for the court to conclude that it was in Stewart's best interests to allow him to pursue baseball on Sundays, even if a conflict arose with Paula's visitation.[23]

**V.	CONCLUSION**

We AFFIRM the decision of the superior court in all respects.

---

[22]	*See Barancik v. Meade*, 106 S.W.3d 582, 590 (Mo. App. 2003) (remanding because "[t]he trial court did not allow for . . . rescheduled or compensatory visitation time on days when child does not have games or practices when there is a conflict").

[23]	*See Helen S.K. v. Samuel M.K.*, 288 P.3d 463, 469, 476 (Alaska 2012) (affirming superior court order that took into account child's preference and fear that visitation would interfere with his extracurricular activities).