*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| LEWIS G., | ) |
| | ) Supreme Court No. S-16761 |
| Appellant, | ) |
| | ) Superior Court No. 3PA-16-01663 CI |
| v. | ) |
| | ) O P I N I O N |
| CASSIE Y., | ) |
| | ) No. 7304 – September 28, 2018 |
| Appellee. | ) |
| | ) |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Vanessa White, Judge.

Appearances: Lewis G., pro se, San Antonio, Texas, Appellant. Darryl L. Jones, Jones & Associates, LLC, Palmer, for Appellee.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

BOLGER, Justice.

## I. INTRODUCTION

A mother moved from Texas to Alaska, taking her two children with her. The father, still residing in Texas, filed for divorce. The parties executed a settlement agreement awarding joint legal custody of the children to the parents, primary physical custody to the mother, and custody during the summer and over the Christmas holiday

to the father. Cooperation between the parents began to deteriorate, and the father moved to modify custody.

The superior court concluded that there had been a substantial change of circumstances and conducted a best interests analysis. The court elected to keep the custody agreement largely unchanged. However, it required the father's future visitation to occur in Alaska and imposed other conditions on his visitation and the parties' communications. The father appeals, alleging several deficiencies in the court's analysis and arguing that his due process rights were violated. Finding no error, we affirm the superior court's order.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

Lewis G. and Cassie Y.[1] have two children: Rachel, born in December 2002, and Harold, born in March 2005. In March 2015 Cassie moved from Texas to Alaska, taking the children with her. After relocating, Cassie sought a domestic violence protective order against Lewis, which the district court granted based on findings of both assault and sexual offense.

Harold struggled with suicidal ideation while living in Texas, and he continued to do so following the move to Alaska. In May 2015 Cassie scheduled Harold for counseling. Shortly thereafter Harold attempted to hurt himself and was hospitalized at North Star Hospital. After being released Harold continued to receive counseling. He also began seeing a psychiatrist and taking prescribed psychotropic medications.

---

[1]    We use pseudonyms throughout to protect the family's privacy.

In October 2015 a Texas court entered a Final Decree of Divorce that included a child custody order.[2] The custody order provided Cassie and Lewis joint legal custody of the children and Cassie primary physical custody. It also stated that as long as the parents resided more than 100 miles apart, Lewis would have physical custody of the children during summer months and the period between Christmas and New Year's Day.

In the months following the divorce, Cassie and Lewis initially communicated amicably. Over time, however, Lewis began to text and email Cassie with increasing frequency, accusing her of preventing him from contacting the children and failing to respond to requests for information. In response, Cassie accused Lewis of harassing her and displaying stalking behavior. Cassie eventually stopped responding to Lewis's texts and directed Lewis to communicate with her only by email. Lewis continued to send her both texts and emails.

In June 2016 Harold and Rachel went to stay with Lewis in Texas for the summer per the terms of the custody order. Later that month Lewis filed a motion to modify custody in a Texas court. He alleged that Cassie had exposed the children to a convicted sex offender and that Cassie was neglecting the children's academic and medical needs. The Texas court sent an investigator to Alaska, who determined that a sex offender was living in a trailer on the same property as Cassie and the children. Although the investigator expressed concern, he noted that the man was scheduled to move out soon, and he advised the Texas court that he did not believe the children were in danger. Additionally, prior to the investigator's trip to Alaska, Lewis told the investigator that he sometimes uses methamphetamine.

---

[2]     Cassie and Lewis never married but obtained a divorce under Texas common law.

Despite receiving ongoing treatment, Harold's mental health struggles persisted. During 2016 he continued to battle impulses to hurt himself. In October Harold ingested some of his mother's medication and was admitted to the hospital for treatment. And in January 2017 Harold was diagnosed with bipolar disorder with psychosis and ADHD. In March 2017 he was again hospitalized at North Star.

## B.    Proceedings

In October 2016 the Texas court concluded that it lacked jurisdiction over the motion to modify custody because the children resided in Alaska. A few days later Lewis filed a motion in Alaska superior court to change custody. He argued that Harold's drug overdose earlier that month indicated that the children were at risk of harm; that the children's grades had declined; that a convicted child rapist had lived on the same property as Cassie and the children; that Harold's mental health issues were a product of his living situation; that the children were living in a crowded home with people often moving in and out; and that Cassie had attempted to sabotage Lewis's relationship with the children. Lewis also filed a motion seeking temporary custody of Harold and Rachel on similar grounds. The superior court referred the dispute to a family court master.

A hearing on the temporary custody motion was held in January 2017. The master heard testimony from Cassie, Lewis, Harold's clinicians, and one of the coaches of Rachel's sports team. Lewis argued during the hearing that Cassie had not adequately responded to interrogatories and a request for documents; the court later ordered Cassie to either provide answers to Lewis's interrogatories and produce the requested documents or state objections in writing. The master recommended that Lewis's motion for temporary custody be denied, and the superior court adopted this recommendation.

A hearing on the motion to change custody was held in March 2017. At the outset Lewis stated that Cassie had not provided adequate answers to his interrogatories.

He argued that he had not had time to file an objection because Cassie had submitted her responses less than two weeks before the hearing, and he asked the master to delay the hearing by 30 days. Cassie objected to a delay, noting that she had replied to Lewis's interrogatories by the deadline in the court's order. The master declined to delay the hearing. She assured Lewis that he would have an opportunity during the hearing to ask Cassie any questions she had not answered during discovery.

Lewis, Cassie, one of Cassie's friends, one of Rachel's sports team coaches, the investigator appointed by the Texas court, and a member of Cassie's church testified at the hearing. Afterwards the master asked Lewis if he felt his case had been prejudiced by Cassie's failure to provide any requested documents or respond to his interrogatories. Lewis stated that he would like Cassie to answer some questions that had not been adequately addressed during discovery. The master allowed Lewis to ask Cassie several questions. Lewis answered "yes" when the master asked if the court had "fully addressed [his] concerns about the discovery."

The master made findings on the record a few weeks later. Based on Harold's medical issues, repeated hospitalizations, and accidental overdose, the master concluded that a substantial change in circumstances had occurred, which could warrant modification of the custody agreement.[3] She next considered whether modification of the agreement would be in the children's best interests.[4] Citing Cassie's efforts to address Harold's mental health needs while in Alaska — and concluding that Lewis had not "fully recognized or accepted the extent of [Harold's] mental health issues" — the

---

[3] *See* AS 25.20.110(a) ("An award of custody of a child or visitation with the child may be modified if the court determines that a change in circumstances requires the modification of the award and the modification is in the best interests of the child.").

[4] *Id.*; *see* AS 25.24.150(c) (listing factors a court should consider in its best interests determination).

master found that the first and second best interests factors weighed in Cassie's favor.[5] The master further found that the fifth factor weighed "heavily" in Cassie's favor.[6] She based this finding on the fact that "all [Harold's] providers are here in Alaska," and she stated that given Harold's "fragile condition," it was "pretty crucial" for him to experience "continuity" in his contact with his doctors and therapists. And noting Lewis's admission during the hearing that he had used methamphetamine in the past, the master found that the eighth best interests factor also weighed in Cassie's favor.[7]

The master found that the sixth factor weighed "slightly" in Lewis's favor based on the finding that Cassie had unreasonably failed to keep Lewis informed of important information about the children's medical care.[8] But the master acknowledged Cassie's complaints that Lewis's repeated requests for information could be overbearing. The master found that the evidence was neutral as to the other enumerated factors.[9]

---

[5]    See AS 25.24.150(c) ("In determining the best interests of the child the court shall consider (1) the physical, emotional, mental, religious, and social needs of the child; [and] (2) the capability and desire of each parent to meet these needs . . . .").

[6]    See AS 25.24.150(c)(5) (directing the court to consider in the best interests analysis "the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity").

[7]    See AS 25.24.150(c)(8) (directing the court to consider in the best interests analysis "evidence that substance abuse by either parent . . . directly affects the emotional or physical well-being of the child").

[8]    See AS 25.24.150(c)(6) (directing the court to consider in the best interests analysis "the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child").

[9]    The master noted the concerns about the sex offender living on the property, but declined to weigh this factor against Cassie because the master found that Cassie had "sufficient safeguards in place to assure the children's safety." The master

(continued...)

Lastly, the master indicated that Harold's mental health issues, Rachel's participation in athletics, and recent improvements in the children's academic performance were other factors that she had taken into account when conducting her analysis.[10]

Based on her findings, the master recommended that "custody be exactly as what the parties agreed to [in their custody agreement] except that [Lewis's] visitation needs to be in the State of Alaska." The master clarified that after custody was modified, Lewis could "come to Alaska and have the whole summer visitation that he would otherwise be able to exercise in Texas." The master also recommended that Cassie be required to communicate with Lewis and to facilitate communication between him and the children. Lastly, she recommended that Lewis be required to follow hospital recommendations for visitation and passes while exercising visitation, and that Rachel's "participation in her extracurricular activities . . . be maintained in the State of Alaska."

The master issued written findings of fact and conclusions of law memorializing the findings on the record, which the superior court approved. Lewis's

---

[9]     (...continued)
also acknowledged that an Alaska court had previously found that Lewis had committed domestic violence. *See* AS 25.24.150(c)(7) (directing the court to consider in the best interests analysis "any evidence of domestic violence . . . or a history of violence between the parents"); *see also* AS 25.24.150(g) ("There is a rebuttable presumption that a parent who has a history of perpetrating domestic violence against the other parent, a child, or a domestic living partner may not be awarded sole legal custody, sole physical custody, joint legal custody, or joint physical custody of a child."). However, because the parents' custody agreement granted Lewis partial custody, the master concluded that the issue of Lewis's domestic violence had been "waive[d]." While Cassie challenges this conclusion in her briefing, she did not appeal from the court's ruling. Accordingly, we decline to address this issue. *See Peterson v. Ek*, 93 P.3d 458, 467 (Alaska 2004) ("We have consistently held that failure to file a cross-appeal waives the right to contest rulings below.").

[10]     *See* AS 25.24.150(c)(9) (directing the court to consider in the best interests analysis "other factors that the court considers pertinent").

motion for reconsideration was denied, and he filed an appeal. Lewis argues that the court erred in conducting its best interests analysis, that several portions of the court's order are unenforceable or invalid, and that the court violated his due process rights by failing to follow the rules of civil procedure. He also argues that the requirement that the children remain in Alaska during his periods of custody was unduly restrictive.

After Lewis filed his appeal, we issued a remand order requiring the superior court to make supplemental findings on Lewis's substance abuse. On remand the master concluded that no evidence had been presented to show that Lewis's substance abuse had a direct impact on the children. She thus concluded that the eighth best interests factor in AS 25.24.150(c) should not have weighed against Lewis.[11] She nevertheless concluded in light of the other evidence in the record, that "[t]hese supplemental findings should not alter the court's custody award." However, after Lewis objected to these supplemental findings, the superior court issued an order relaxing the requirement that Lewis exercise his summer visitation in Alaska.[12]

With respect to the effect of the court's findings concerning Lewis's substance abuse, we review the court's order as amended. We conclude that the supplemental order renders Lewis's objections to the requirement that he exercise visitation in Alaska moot; accordingly, we decline to address his arguments concerning

---

[11]    *See* AS 25.24.150(c)(8) (directing the court to consider "evidence that substance abuse by either parent or other members of the household *directly affects* the emotional or physical well-being of the child" (emphasis added)).

[12]    The court's order stated that it "is not now requiring visits to occur in Alaska, but is only recommending that . . . to promote stability" and provided that Lewis "is entitled to insist his visitation occur in Texas."

that aspect of the original order.[13] We are not otherwise reviewing either the supplemental decision or the several motions now pending since Lewis filed his appeal.

## III. DISCUSSION

### A. The Court Did Not Err In Making Its AS 25.24.150(c) Best Interests Findings.

"Alaska Statute 25.24.150(c) requires that the superior court base its decision to modify a custody order on the best interests of the child. Alaska Statute 25.24.150(c) lists the factors the court should consider in its best interests determination."[14] Lewis argues that the superior court failed to take relevant evidence into account when conducting this best interests analysis. He further argues that some of the court's best interests findings were not supported by the record. Lastly he contends that the court abused its discretion by considering Lewis's substance abuse in its best interests analysis.

A trial court has broad discretion in deciding child custody issues.[15] "We give 'particular deference' to the trial court's factual findings when they are based primarily on oral testimony, because the trial court, not this court, performs the function of judging the credibility of witnesses and weighing conflicting evidence."[16] We will reverse a trial court's resolution of child custody issues only if the "court has abused its

---

[13] Specifically we decline to address Lewis's contentions that the requirement "would essentially end the relationship that [Lewis] and his children share" and that the superior court concluded without any "input from medical providers" that visitation outside of Alaska posed a "potential risk to [Harold]."

[14] *Harris v. Governale*, 311 P.3d 1052, 1055 (Alaska 2013).

[15] *Millette v. Millette*, 177 P.3d 258, 261 (Alaska 2008).

[16] *Id.* (alteration omitted) (quoting *Ebertz v. Ebertz*, 113 P.3d 643, 646 (Alaska 2005)).

discretion or the controlling factual findings are clearly erroneous."[17] "The superior court abuses its discretion if it considers improper factors in determining custody, fails to consider statutorily mandated factors, or assigns disproportionate weight to some factors while ignoring others."[18] A court's factual findings are clearly erroneous when, after reviewing the record, we are left "with a definite and firm conviction that a mistake has been made."[19]

### 1. The superior court did not err by failing to consider relevant evidence.

Lewis contends that the superior court failed to take relevant evidence into account when making its best interests findings.[20] He challenges the court's findings that the first two AS 25.24.150(c) factors[21] weigh in Cassie's favor on the grounds that the court "overlooked or ignored many things [a]ffecting the physical, mental and/or emotional health of the children," including evidence that a sex offender had lived on the same property as the children, that the children had struggled at school, and that Cassie

---

[17] *Harris*, 311 P.3d at 1055 (quoting *Iverson v. Griffith*, 180 P.3d 943, 945 (Alaska 2008)).

[18] *Id.* (quoting *Iverson*, 180 P.3d at 945).

[19] *Millette*, 177 P.3d at 261 (quoting *Dingeman v. Dingeman*, 865 P.2d 94, 96 (Alaska 1993)).

[20] Lewis suggests that the court's failure to consider relevant evidence constituted an abuse of discretion. However, he effectively contends that the court erred in finding that several of the AS 25.24.150(c) factors favored Cassie and that other factors were neutral or weighed "slightly" in Lewis's favor. The court's best interests determinations are factual findings that we review for clear error. *See Harris*, 311 P.3d at 1055-56.

[21] *See* AS 25.24.150(c)(1), (2) ("In determining the best interests of the child the court shall consider (1) the physical, emotional, mental, religious, and social needs of the child; [and] (2) the capability and desire of each parent to meet these needs . . . .").

was unwilling to communicate with Lewis. He similarly contends that the court "failed to consider or ignored several things that cannot be ignored" when analyzing the stability and continuity factor,[22] including evidence concerning the sex offender, the children's grades, Harold's accidental overdose, the frequency with which relatives moved in and out of the children's home, and "the conditions in [Lewis's] home." Lastly Lewis argues that the court failed to fully account for Cassie's unwillingness to communicate with Lewis when it concluded the sixth factor — the willingness of each parent to facilitate and encourage a relationship between the children and the other parent — weighed only "slightly" in Lewis's favor.

We have rejected similar arguments in the past. In *Millette v. Millette*, for instance, a father challenged the court's finding that a best interests factor weighed in favor of the mother on the grounds that the superior court "failed to consider" relevant evidence.[23] We found the father's argument unpersuasive. While acknowledging that "a review of the evidence provides some support for [the father's] assertions," we concluded the superior court's "findings favoring [the mother] are also supported by the record."[24] Thus "[t]hough the record may have presented some evidence disfavoring both parties, the court's decision that this factor favored [the mother] was not clearly erroneous."[25] And in *Harris v. Governale* a superior court discussed the close relationship between a father and the father's parents, but did not "separately evaluate"

---

[22]     *See* AS 25.24.150(c)(5).

[23]     177 P.3d at 264.

[24]     *Id.*

[25]     *Id.*; *see also James R. v. Kylie R.*, 320 P.3d 273, 282 (Alaska 2014) (acknowledging the existence of "some countervailing evidence," but declining appellant's "invitation to reweigh the conflicting evidence in [the] case").

other less positive relationships affecting the stability of the father's household.[26] Concluding that "it was not unreasonable for the court to highlight the importance of the paternal grandparents," we held that the superior court did not clearly err by concluding that the stability and continuity factor favored the father.[27]

In light of this precedent, we reject Lewis's challenges to the court's findings on the first, second, fifth, and sixth best interests factors. The court's best interests findings are supported by the record. In support of its finding that the first and second factors favor Cassie, the court stated that Cassie had made extensive efforts to address Harold's mental health needs. It also stated that Lewis had not "fully recognized or accepted the extent of [Harold's] mental health issues."

Evidence in the record supports both assertions. During the hearings, Cassie and one of Harold's clinicians described Harold's treatment program. The court also heard testimony that, after Harold was hospitalized in June 2015, Cassie immediately set up a recommended follow-up appointment with a psychiatrist. And Cassie testified that Lewis had stopped Harold from seeing a counselor in the past, had taken Harold off his medication, and had failed to ensure that Harold would have sufficient medication or access to a doctor during his period of custody.

The court found that the fifth factor favored Cassie in light of Harold's "fragile condition," "profound mental health issues," and repeated hospitalizations. The testimony of Cassie, as well as Harold's psychiatrist, supports the court's characterization of Harold's health; the record also contains evidence of Harold's hospital stays and treatment program. Additionally Cassie testified that Harold "thrives" on a regular schedule and that significant changes in his life tend to exacerbate his mental

---

[26]    311 P.3d 1052, 1056 (Alaska 2013).

[27]    *Id.*

health issues. Lastly the court indicated that the sixth factor weighs in Lewis's favor due to Cassie's failure to keep Lewis informed of medical issues affecting the children. Lewis's testimony and records of the parties' text messages support the court's characterization.

Citing *Houston v. Wolpert*,[28] Lewis argues that the court's analysis of the stability and continuity factor should have taken into account "the totality of the circumstances [the children] were likely to encounter in their respective parents' homes." (Alteration in original.) In *Houston* a father argued that the superior court "abused its discretion because it never 'offered any commentary or findings on [the father's] ability to maintain stable and satisfactory relations between himself and the child.' "[29] We held that the court's conclusion that "the child had been in [the mother's] care for most of her life and that this stability would be disrupted if custody were awarded to [the father] . . . was not unreasonable."[30] Like the father in *Houston*, Lewis argues the court should have focused to a greater extent on his ability to provide stability; as in *Houston*, the superior court instead focused on the potential negative effects of disrupting the stability the child benefitted from under the current custody arrangement. Our holding in *Houston* does not support Lewis's claim that the court's best interests findings were erroneous.

As in *Harris*, the superior court did not make findings expressly addressing all relevant evidence in the record. And as in *Millette*, there is evidence in the record that "provides some support for [Lewis's] assertions."[31] But because the findings Lewis

---

[28]     332 P.3d 1279, 1284 (Alaska 2014).

[29]     *Id.* at 1283.

[30]     *Id.* at 1284.

[31]     *Millette v. Millette*, 177 P.3d 258, 264 (Alaska 2008).

challenges are supported by evidence in the record, we reject Lewis's contention that the court's best interests analysis was erroneous.

## 2. The court's best interests findings are not otherwise erroneous.

In addition to arguing that the court failed to consider relevant evidence when making its best interests findings, Lewis challenges three of the court's findings on other grounds. First he contests the court's statement that Harold was in a "fragile condition," arguing that the master was "not qualified to determine the condition of the child." Second he argues that the court erred by finding that the sixth factor favored him only slightly because in light of Cassie's noncompliance with past orders "the likelihood that she will just comply with [the court's order mandating communication] seems slim." Finally Lewis contests the court's finding that Cassie had safeguards in place to protect the children from the sex offender, which the court cited in support of its finding that the seventh factor did not weigh in favor of either parent.

Our review of the record does not leave us "with a definite and firm conviction" that the challenged best interests findings are erroneous.[32] As noted above there is extensive support in the record for the court's conclusion that Harold was in a "fragile" state at the time of the hearings, including testimony from his mother and his psychiatrist, plus extensive medical records. Lewis's contention that Cassie will not comply with the order mandating communication is simply a prediction about Cassie's future conduct, and is not relevant to whether the court erred in its analysis of the sixth factor. In any event the parties' testimony and the records of their communications provide support for the court's conclusion that this factor weighed only slightly in Lewis's favor. Lastly Cassie's testimony that she took steps to protect her children

---

[32] *Id.* at 261 (quoting *Dingeman v. Dingeman*, 865 P.2d 94, 96 (Alaska 1993)).

-14-                                                                 7304

provides support for the court's finding that she had "sufficient safeguards in place to assure the children's safety," and Office of Children's Services' decision to place additional children in the home further supports the court's conclusion. Accordingly we cannot say that the court's best interests findings were clearly erroneous.

### 3. The superior court did not abuse its discretion by considering evidence of Lewis's substance abuse.

Lewis argues that the superior court abused its discretion by concluding that the eighth best interests factor weighed against him. He claims that while there was evidence in the record that he used methamphetamine, "[t]here was absolutely no evidence presented that [his substance abuse] . . . had affected the children in any way, which is what the statute requires."

After Lewis filed his appeal, the master issued supplemental findings stating that Cassie "did not establish that [Lewis's] substance abuse . . . directly impacted the parties' minor children." Accordingly she stated that the eighth factor "should not have weighed against either party." The master nevertheless concluded that the remaining evidence in the record regarding the other best interests factors was sufficient to support the court's custody decision and thus did not recommend a change to the custody award. The superior court agreed, stating in a supplemental order that "[t]he other best interests factors support the Master's recommendations."

Lewis is correct that the eighth best interests factor considers only evidence of substance abuse that "*directly affects* the emotional or physical well-being of the child."[33] However the court's supplemental decision — acknowledging that this factor does not weigh against either party, but concluding that the remaining factors support the court's custody determination — renders Lewis's argument concerning the court's

---

[33]     AS 25.24.150(c)(8) (emphasis added); *see also, e.g.*, *Barrett v. Alguire*, 35 P.3d 1, 11 (Alaska 2001).

analysis of this factor in its original order moot. And while the evidence of Lewis's substance abuse in the record has no bearing on the eighth best interests factor, the court committed no error by considering Lewis's methamphetamine use as *part* of its best interests analysis.[34] Accordingly we conclude that the court's consideration of Lewis's substance abuse did not constitute an abuse of discretion.

**B.** **The Superior Court Did Not Abuse Its Discretion By Ordering Joint Legal Custody.**

Lewis argues that the superior court erred by ordering joint legal custody. Citing *William P. v. Taunya P.*,[35] Lewis argues that "joint legal custody is inappropriate if the parents cannot communicate effectively." He further notes that the court "found that [Cassie] had been refusing to communicate with [Lewis]." Accordingly Lewis concludes that he should have been awarded sole legal custody. We review a court's decision whether to grant joint legal custody for abuse of discretion.[36]

We held in *William P.* that when a superior court concludes that parents cannot communicate effectively, the court does not err by electing to award sole custody to one parent.[37] We have reached this conclusion in other cases as well.[38] Despite Lewis's characterization, the superior court here did not find that the parents could not communicate effectively — unlike in *William P.* and related cases. Rather the court

---

[34] *See* AS 25.24.150(c)(9) (directing the court to consider "other factors that [it] considers pertinent").

[35] 258 P.3d 812, 815 (Alaska 2011).

[36] *See Houston v. Wolpert*, 332 P.3d 1279, 1285 (Alaska 2014).

[37] *See William P.*, 258 P.3d at 815.

[38] *See Houston*, 332 P.3d at 1285; *Co v. Matson*, 313 P.3d 521, 525 (Alaska 2013).

noted that Cassie had not kept Lewis adequately informed of the children's medical treatment and lamented the "vicious circle" of Lewis hounding Cassie for information and Cassie becoming reticent due to frustration. But though the court acknowledged that the parents had difficulty communicating prior to the hearings, it did not find that communication was impossible.

Furthermore the court's findings and instructions for the parties suggest the court believed that the parties would be capable of communicating in the future. The court instructed Cassie and Lewis that in the future, communication between the parents regarding the children's medical appointments should occur "in writing via email." And the court noted the parties' need for medical information about the children and "a good way to exchange it." Because the court did not conclude that Cassie and Lewis are incapable of communicating, we decline to conclude that its decision to award joint custody constituted an abuse of discretion.

### C. The Conditions Imposed On Lewis's Visitation Were Not Too Vague To Be Workable.

In its written findings of fact and conclusions of law, the superior court directed Lewis to "maintain all therapeutic appointments while exercising visitation" with the children, to "follow therapeutic recommendations as to [Harold] and [Rachel]," and to "follow the visitation guidelines [set] by [Harold's] treatment facility or treating physician." Lewis argues that these requirements are too vague to be workable. He contends that unanswered questions preclude him from complying with the court's order, including whether Lewis would be "allowed to seek a second opinion" if he does not agree with the recommendations and what procedures he is to follow if

"recommendations from two or more [providers] contradict each other." We have held that uncertainty can be "fatal to the validity of [a] court's visitation . . . award[]."[39]

We addressed similar arguments in *Virgin v. Virgin*[40] and *Matthew P. v. Gail S.*[41] In *Virgin* we considered a provision in a divorce decree indicating that if the mother remained in the city where she was then residing, the father's visitation should be "open and reasonable."[42] The father argued that this ambiguous provision rendered the order "too vague to be sustained upon review."[43] Noting that "[t]he order's only ambiguity" would become relevant only if the mother actually failed to move, we held that "[b]ecause it is unlikely that the parties will have to rely on this provision, its ambiguity is not fatal."[44] We further held that the father could "ask the superior court to clarify its order" as needed.[45] In *Matthew P.* we similarly acknowledged that a superior court "could have been more precise in articulating what it expected [the appellant] to do in order to remove the requirement for supervised visitation."[46] But we held that the

---

[39]    *Long v. Long*, 816 P.2d 145, 157 (Alaska 1991).

[40]    990 P.2d 1040 (Alaska 1999).

[41]    354 P.3d 1044 (Alaska 2015).

[42]    990 P.2d at 1048.

[43]    *Id.*

[44]    *Id.*

[45]    *Id.*

[46]    354 P.3d at 1050-51.

parties could resolve any confusion "about what issues the court wants addressed" by "mov[ing] the [superior] court for clarification."[47]

Here we are similarly unpersuaded that the court's order is too vague to be sustained upon review. Like the provision examined in *Virgin*, the majority of the ambiguities Lewis describes would become relevant only under a narrow set of future circumstances that are not certain to occur. We suggest the parties should resolve any future confusion concerning the superior court's instructions by moving that court for clarification.

### D. The Requirement That Rachel's Extracurricular Activities Be Maintained Was Not Overly Restrictive.

The master recommended that Rachel's "participation in her extracurricular activities . . . be maintained in the State of Alaska." The superior court's written order stated that "[t]he minor children's extracurricular activities shall be maintained by both parties."[48] Lewis argues that the requirement that the children's participation in extracurricular activities be maintained was overly restrictive. He contends that decisions about what activities children should participate in are "choices that are a parent's to make, not a court's." We review this portion of the court's order for abuse of discretion.[49]

---

[47]    *Id.* at 1051.

[48]    The order also stated that "[Harold's] participation in . . . practices and competitions shall be maintained during [Lewis's] visitation." The reference to Harold, rather than Rachel, is apparently an error; during the hearings the court heard testimony about Rachel's participation in practices and competitions, and indicated its desire to ensure her participation continued.

[49]    *See Frackman v. Enzor*, 327 P.3d 878, 884 (Alaska 2014).

We considered a similar situation in *Frackman v. Enzor*.[50] Noting that the parties' son was "a gifted athlete and may have a chance to play baseball professionally," the superior court "allowed [his father] '[to] authorize [the son] to attend baseball training, tournaments, and related activities' on Sundays even though [the mother's] visitation was also ordered for Sundays."[51] We affirmed, reasoning that "the superior court properly concluded . . . that [the son's] best interests — here, developing his baseball skills and eventually his potential to become an accomplished athlete — took precedence over [the mother's] right to have visitation on Sundays."[52]

Here the court heard evidence that Rachel is an extremely accomplished athlete, and it found that she "may very well be on course to being an Olympic athlete." The court further stated that Rachel's passion would give Lewis "an opportunity to engage in that [activity] with her . . . in Alaska." In light of these findings, we conclude that the requirement that Rachel's participation in practices and competitions be maintained during Lewis's visits did not constitute an abuse of discretion. The court's order takes Rachel's best interests into account, and it does not seem likely to unduly impact Lewis's visitation or his relationship with his daughter.

### E. The Superior Court Did Not Deny Lewis His Right To Due Process By Ignoring The Rules Of Civil Procedure.

Lewis argues that the court "effectively denied [him] his right to due process" by failing to order Cassie to respond to his discovery requests in a timely

---

[50] *Id.*

[51] *Id.* (second alteration in original). The court provided that the mother could make up missed visits on other days. *Id.*

[52] *Id.*

fashion,[53] declining to conclude that Cassie waived her right to object to his requests, and failing to grant Lewis sufficient time to address deficiencies in Cassie's responses.[54] He further argues that because he received Cassie's answers less than two weeks before the March hearing, and because the court denied his request to reschedule the hearing, Lewis did not have an opportunity to respond to the deficiencies in Cassie's answers to the interrogatories or to "deal with [Cassie's] failure to produce any documents." And he contends that because Cassie did not respond to Lewis's discovery requests in a timely fashion, the court should have concluded that she had waived her right to object.[55] "Whether the superior court violated a party's due process rights is a question of law, which we review de novo."[56]

Even assuming the truth of Lewis's allegations, any violation of the Alaska Civil Rules must have prejudiced Lewis in order to warrant disturbing the custody modification order.[57] "The party alleging error bears the burden of showing the error

---

[53]    *See* Alaska R. Civ. P. 33(b)(3) (setting time limit for objecting to interrogatories).

[54]    *See* Alaska R. Civ. P. 33(b)(4) ("All grounds for an objection to an interrogatory shall be stated with specificity. Any ground not stated in a timely objection is waived unless the party's failure to object is excused by the court for good cause shown.").

[55]    *See id.*

[56]    *Easley v. Easley*, 394 P.3d 517, 520 (Alaska 2017) (quoting *McCarrey v. Kaylor*, 301 P.3d 559, 563 (Alaska 2013)).

[57]    Alaska R. Civ. P. 61 ("[N]o error or defect in any ruling or order or in anything done or omitted by the court . . . is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice."); *see Roberson v. Morrison*, No. S-15361, 2014 WL 6091943, at *2 (Alaska

(continued...)

was prejudicial."[58] But Lewis does not attempt to show how he was prejudiced by the procedural deficiencies, and it is not clear how he could do so. When Lewis's request that the March hearing be rescheduled was denied, he was granted an opportunity during that hearing to ask Cassie for any information she had not provided during discovery. After asking Cassie several questions, Lewis indicated that the court had "fully addressed [his] concerns about the discovery." Earlier in the proceeding, the master asked Lewis whether he "fe[lt] like [his] case ha[d] been prejudiced by the lack of discovery from [Cassie]." Lewis replied that his only concern had been Cassie's failure to respond to his interrogatories. Accordingly we hold that any procedural deficiencies were harmless.

## IV.   CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the superior court.

---

[57]      (...continued)
Nov. 12, 2014) (rejecting claim that superior court's delay in issuing final decision violated Alaska Rules of Civil Procedure and appellant's due process rights, because appellant "ha[d] not shown any prejudice from the timing of the superior court's order"); *McDonald v. Dean*, No. S-10914, 2004 WL 243557, at *3 (Alaska Feb. 11, 2004) (rejecting due process claim arising from a child custody dispute because "although [the father] failed to strictly comply with Alaska Civil Rule 77 . . . any procedural defect was harmless").

[58]      *Jerry B. v. Sally B.*, 377 P.3d 916, 930 (Alaska 2016).